**Freymoyer v. Freymoyer**

C.P. of Berks County, no. 07-1263, I.D. #2

*Brian K. Freymoyer,* pro se.
*Kathy Freymoyer,* pro se.

LASH, *J.,* December 1, 2009—The matter before this court is the custody complaint filed by plaintiff, Brian K. Freymoyer (Father), seeking partial custody of the parties' minor children, Devin and Nathan. The court held a custody trial on November 30, 2009. From the time of the parties' separation, based upon the terms set forth in a protection from abuse final order, Father's custody time has been supervised. At the time of trial, Father agreed to his visits continuing to be supervised, but has requested a modification to permit the supervisor be his aunt, Sandra Funk. This court enters the following findings of fact:

## I. FINDINGS OF FACT

(1) Plaintiff, Brian K. Freymoyer (Father), is an adult individual who currently resides at 607 Gregg Avenue, Reading, Berks County, Pennsylvania 19611-1623.

(2) Defendant, Kathy Freymoyer (Mother), is an adult individual who currently resides at 1329 Windsor Castle Road, Hamburg, Berks County, Pennsylvania 19526.

(3) The parties are the natural parents of two children, Devin, born February 18, 1998, and Nathan, born July 23, 2001 (minor children).

(4) The parties were husband and wife and resided together until February of 2007, when Father was removed from the marital residence through a temporary

protection from abuse order obtained by Mother. The protection from abuse petition was resolved by entry of a final order in favor of Mother on February 16, 2007. The order is set to expire on February 16, 2010.

(5) Since the separation, the minor children have resided with Mother. In the final protection from abuse order, the court entered a temporary custody provision, awarding primary physical custody to Mother, with Father to have partial custody supervised by Frank and Crystal Sivak. Frank is Father's cousin.

(6) Since the entry of the protection from abuse order, Frank and Crystal Sivak have separated. Frank is residing with Father, along with another cousin and the paternal grandfather.

(7) Mother resides with the minor children and her paramour, John Polm. Mr. Polm also has a child, who resides in Florida with her mother. Mr. Polm has not seen his child for some time, but does speak to her by telephone.

(8) Due to their separation or for other reasons, Frank and Crystal Sivak are no longer an option for continuing as supervisors for Father's visitation. Father's aunt, Sandra Funk, was substituted as a supervisor, but Mother became dissatisfied, after Father left Ms. Funk's residence with the minor children and later became intoxicated. Subsequently, through court proceedings, Kids First, an agency that handles supervised visitation services, was recommended to be the supervisor, but was not utilized due to Father's financial constraints. Accordingly, Father has not had visits with the minor children recently, but does maintain contact by telephone.

## II. DISCUSSION

In making disposition, this court considered the testimony of Mother, Father's proposed supervisor, Sandra Funk, Father's probation officer, Susan Halbeisen, and the in camera testimony of the elder child, Devin. Devin's in camera conference was held between him and the court alone, outside the presence of the parties, by agreement of the parties.

Father is requesting supervised visitation at Sandra Funk's house with Ms. Funk to be the supervisor. Mother had some reservations, based on the previous incident in which Ms. Funk allowed the minor children in Father's care outside of her presence.

Father has a history of alcohol abuse. He had several automobile accidents. He is on probation for driving under the influence of alcohol. Alcohol was also a factor in the incident resulting in Mother obtaining the protection from abuse order. Mother is adamant that the minor children are not to be exposed to Father while he is drinking, or to any of his friends.

Upon questioning by this court, Mother conceded that if rules were put in place, including a prohibition against Father using alcohol during or prior to his visits with the minor children, and that Ms. Funk would never permit the minor children outside her presence, then she would agree to Ms. Funk being the supervisor.

After further discussion, the parties reached an understanding allowing Father's visits to be supervised by Ms. Funk. Mother would transport the minor children to Ms.

Funk's house. Prior to that time, Ms. Funk will pick up Father from his residence and transport him to her residence. Father cannot operate a vehicle, as his license is suspended. If Ms. Funk has any reservations about Father's condition, she will decline to pick up Father and will notify Mother that the visit will not take place. If there are no issues, Father will be permitted to visit with the minor children at Ms. Funk's house. Ms. Funk will also be permitted to transport Father and the minor children to suitable public locations, such as a restaurant, the mall, or some recreational facility. However, it is stressed that Ms. Funk, at no time, will permit the minor children outside of her presence. Further, if Father creates a problem, Ms. Funk will notify Mother immediately and terminate the visit.

This court is satisfied that Ms. Funk is responsible and caring and will perform her supervision in an appropriate manner. We are also satisfied that Ms. Funk will maintain proper controls such that if Father does not abide by the terms of the order, Ms. Funk will end the visit immediately and will report to Mother and, if necessary, to the court. Mother also appears to be satisfied with this arrangement. Accordingly, we enter the following order:

## ORDER

And now, December 1, 2009, after trial held, custody of the parties' minor children, Devin, born February 18, 1998, and Nathan, born July 23, 2001, (minor children), shall be as follows:

(1) Defendant, Kathy Freymoyer (Mother), shall have sole legal custody and primary physical custody of the minor children.

(2) Plaintiff, Brian K. Freymoyer (Father), shall have visitation, to be supervised by his aunt, Sandra Funk, at her residence. The parties, by written agreement, can substitute another supervisor.

(3) Father's visits shall take place on alternate Saturdays commencing December 5, 2009 from 11 a.m. to 5 p.m. Visits shall take place with Mother dropping off and picking up the minor children at Ms. Funk's residence. Ms. Funk is responsible for having Father present at her residence when the minor children arrive.

(4) The following rules shall be observed:

(A) At no time when the minor children are under Ms. Funk's supervision shall there be any alcohol present or imbibed.

(B) When Ms. Funk arrives to pick up Father for his visits, she shall observe whether Father is sober. If she has concerns about Father's sobriety, she shall cancel the visit and notify Mother.

(C) No third parties shall be permitted at Ms. Funk's house during the visitation time without Mother's prior written consent, other than the family members who already reside at Ms. Funk's residence; and

(D) Ms. Funk shall be permitted to transport Father and the minor children to places outside of her home, such as restaurants, a mall, or recreational locations to facilitate the visit.

(5) Father shall have reasonable telephone calling privileges with the minor children.

(6) The attached appendix shall be made a part of the within order.

***

## APPENDIX TO ORDER

Certain rules of conduct which generally apply to custody matters are set forth below and are binding on both parties, the breach of which could become the subject of contempt proceedings before this court, or could constitute grounds for modification of this order. If these general rules conflict with any specific provisions of the order, the order shall prevail.

(1) In addition to the foregoing rights, both parties shall also have the following rights with respect to the children:

(A) The right to reasonable telephone contact with the children when they are in the other parent's custody.

(B) The right to be fully informed concerning the progress of the children in school and the children's medical status, including the right to obtain the necessary information directly from the children's school or medical practitioner; and

(C) The right to be informed in advance before any important decisions are made concerning the children and the opportunity to participate in those decisions.

(2) In the event of any serious illness of the children at any time, any party then having custody of the children shall immediately communicate with the other party by telephone or by any other means, informing the other

party as to the nature of such illness, and during such illness, each party shall have the right to visit the children as he or she desires consistent with the proper medical care of the children.

(3) Neither party shall alienate nor permit to attempt to alienate the children from the other party. While in the presence of the children, neither parent shall make any remarks or do anything which is derogatory or uncomplimentary to the other and it shall be the duty of each parent to uphold the other parent as one the children should respect and love.

(4) Both parties shall provide each other with their addresses and telephone numbers of their residences and any time they take a trip with the children out of the jurisdiction of Berks County in excess of three days.

(5) The parties shall not conduct arguments or heated conversation when they are together in the presence of their children.

(6) The parties shall, at all times, consider the children's best interests, and act accordingly. It is in a child's best interest to understand that he or she is trying to desperately cope with the fact of his or her parents' separation, and needs help in loving both parents, rather than interference or censure.

(7) Neither party shall question the children as to the personal lives of the other parent except insofar as necessary to insure the personal safety of the children. By this we mean that the children will not be used as spies on the other party. It is harmful to a child to be put in the role of spy.

(8) The parties should remember that they cannot teach their children proper moral conduct by indulging in improper conduct themselves. Children are quick to recognize hypocrisy, and the parent who maintains a double standard will lose the respect of his or her child.

(9) Weekend and evening visitation shall be subject to:

(A) Arrangements will be worked out beforehand between the parties without forcing the children to make choices and run the risk of parental displeasure. However, the children shall be consulted as to their schedules when appropriate.

(B) Visitation rights shall be exercised at reasonable hours and under circumstances reasonably acceptable to the other party and to the need and desire of the minor children.

(C) If a party finds himself or herself unable to keep an appointment, he or she should give immediate notice to the other party, so as to avoid subjecting the children to unnecessary apprehension and failure of expectations.

(D) The party having custody of the children should prepare them both physically and mentally for the transfer of custody to the other party and have them available at the time and place mutually agreed upon.

(E) If either party or a child has plans which conflict with a scheduled visit and wish to change such visitation, the parties should make arrangements for an adjustment acceptable to the schedules of everyone involved. Pre-

determined schedules are not written in stone, and both parties should be flexible for the sake of the children.

(F) If a party shows up for a visit under the influence of alcohol or drugs, the visit may be considered forfeited on those grounds alone.

(10) If either party feels the other party has violated this order, they may petition the court as set forth in Pa.R.C.P. 1915.12.